```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
JANICE MASON, THOMAS MURRAY,                               :
RAFAEL SENCION, G.L. TYLER and ELBA                        :
SERRANO,                                                   :
                                                           :
                         Plaintiffs,                       :    21-CV-9382 (VSB)
                                                           :
            - against -                                    :    **OPINION & ORDER**
                                                           :
                                                           :
                                                           :
DISTRICT COUNCIL 1707, AMERICAN                            :
FEDERATION OF STATE, COUNTY AND                            :
MUNICIPAL EMPLOYEES; and                                   :
AMERICAN FEDERATION OF STATE,                              :
COUNTY AND MUNICIPAL EMPLOYEES,                            :
AS ADMINISTRATOR OF DISTRICT                               :
COUNCIL 1707, AMERICAN FEDERATION                          :
OF STATE, COUNTY, AND MUNICIPAL                            :
EMPLOYEES,                                                 :
                                                           :
                         Defendants.                       :
                                                           :
-----------------------------------------------------------X
```

Appearances:

Arthur Z. Schwartz
Advocates for Justice, Chartered Attorneys
New York, NY
*Counsel for Plaintiffs*

Barry I. Levy
Brian Laurence Bank
Rivkin Radler, LL
Uniondale, NY
*Counsels for Defendants*

VERNON S. BRODERICK, United States District Judge:

Before me is the motion to dismiss the complaint filed by Defendants District Council

1707, American Federation of State, County and Municipal Employees ("DC 1707") and the

American Federation of State, County and Municipal Employees, as Administrator of DC 1707

("AFSCME," together with DC 1707, "Defendants"). (Doc. 19.) Because the complaint contains sufficient factual allegations to plausibly allege the causes of action Plaintiffs assert, Defendants' motion to dismiss is DENIED.

### I. Factual Background[1]

DC 1707 is a labor organization and AFSCME is DC 1707's parent union. (Doc 1, "Complaint" ¶¶ 4, 5.) Plaintiffs were employed by DC 1707 for periods of time ranging from 5 months to 16.8 years. (*Id.* ¶¶ 3,7.) Plaintiffs participated in DC 1707's vacation and severance benefit plans that were established for its non-unionized staff. (*Id.* ¶ 3.) In or around May 2019, AFSCME decided to merge DC 1707 into District Council 37, AFSCME ("DC 37"). (*Id.* ¶ 8.) Following the merger announcement, AFSCME informed Plaintiffs that their employment with DC 1707 would be terminated effective August 31, 2021, and offered Plaintiffs employment with DC 37 under new terms. (*Id.* ¶ 9.) All Plaintiffs, except Plaintiff Murray, chose to accept the offer. (*Id.*) Under the DC 1707 vacation plan, employees were eligible for annual vacation days in an amount that varied based on job title, seniority, and length of employment. (*Id.* ¶ 11.) Plaintiffs were promised that all unused vacation would be paid out after the DC 1707 payroll was terminated but were instructed not to use their vacation time prior to the formal merger of DC 1707 into DC 37. (*Id.* ¶ 13.) Although the DC 1707 human resources director prepared a document which calculated the amount of severance and vacation due to the terminated employees, Plaintiffs were not paid that full amount. (*Id.* ¶¶ 12, 14, 15.) The amount that each Plaintiff was underpaid ranges from $1,577 to $22,738. (*Id.* ¶ 15.) When Plaintiffs demanded

---

[1] The facts contained in this section are based upon the factual allegations set forth in the complaint filed by plaintiffs Janice Mason ("Mason"), Thomas Murray ("Murray"), Rafael Sencion ("Sencion"), G.L. Tyler ("Tyler"), and Elba Serrano ("Serrano," together "Plaintiffs"). (Doc. 1.) I assume the allegations in the Complaint to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

that James Howell ("Howell"), the Administrator of DC 1707, pay the balance they were owed, Howell denied the request. (*Id.* ¶¶ 16, 17.)

## II. Procedural History

Plaintiffs filed the Complaint on November 12, 2021. (Doc. 1) "In their Complaint, Plaintiffs raise causes of action under the Employee Retirement Income Security Act ("ERISA") and Article 6 of the New York State Labor Law. (*Id.* ¶ 1.) On January 14, 2022, Defendants filed their motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and (b)(6). (Doc. 19, "Motion.") Plaintiffs filed their opposition to Defendants' motion on March 14, 2022. (Doc. 28, "Opp.") Defendants filed their reply on March 28, 2022. (Doc. 29, "Reply.")

## III. Legal Standard

### A. *Rule 12(b)(1)*

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question") (cleaned up). Although a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239,

243 (2d Cir. 2014) (cleaned up); *Ernst v. Gateway Plaza Mgmt. Corp.*, No. 11 Civ. 1169(PAC)(RLE), 2012 WL 1438347, at *2 (S.D.N.Y. Mar. 14, 2012) ("In deciding jurisdictional issues, the court may rely on affidavits and other evidence outside the pleadings.").

### B. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citation omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

## IV. Discussion

### A. *ERISA Claims*

"To state a claim under ERISA, a Plaintiff must allege and establish the existence of an 'employee benefit plan' that is governed by ERISA." *Albers v. Guardian Life Ins. Co. of Am.*, No. 98 CIV.6244 DC, 1999 WL 228367, at *2 (S.D.N.Y. Apr. 19, 1999) (citing 29 U.S.C. § 1003(a)). ERISA defines an employee benefit plan as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). An employee welfare benefit plan is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). An employee pension benefit plan is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
> (i)   provides retirement income to employees, or
> (ii)  results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan, fund, or program shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution.

29 U.S.C. § 1002(2)(A).

5

Courts may, but are not required to, decide the applicability of ERISA at the motion to dismiss stage as a matter of law.  *Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 410 (S.D.N.Y. 2015).  Courts in the Second Circuit consider three non-exclusive factors when determining if an employer's undertaking constitutes a "plan" within the meaning of ERISA:  "(1) whether the employer's undertaking or obligation requires managerial discretion in its administration; (2) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits; and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria."  *Okun v. Montefiore Med. Ctr.*, 793 F.3d 277, 279 (2d Cir. 2015).  Defendants argue that Plaintiffs' ERISA clam must be dismissed for lack of subject matter jurisdiction and failure to state a claim because DC 1707's severance and vacation policies do not constitute employee benefit plans under ERISA.  (Motion 6.)  I address each in turn below.

1. **Severance Plan**

Most "employer undertakings or obligations to pay severance benefits" have been held to be "employee welfare benefit plans."  *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 75 (2d Cir. 1996).  However, in *Fort Halifax Packing Co. v. Coyne*, the Supreme Court held that a one-time severance payment that was contingent on a plant closing was not a "plan" under ERISA because it "requires no administrative scheme whatsoever to meet the employer's obligation.  The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control."  482 U.S. 1, 4 (1987).  The Second Circuit reached a similar finding in *James v. Fleet/Norstar Fin. Grp., Inc.*, where an employer agreed to provide terminated employees 60 days of additional pay after announcing a consolidation that would result in employee termination.  992 F.2d 463,

6

466 (2d Cir. 1993) ("Fleet's contemplated payments upon separation of its employees did not constitute an employee welfare benefit 'plan.'").  In reaching this conclusion, the Second Circuit court reasoned that "[t]he certainty of termination of employment . . . does not distinguish this case from *Fort Halifax*, since, despite that certainty, the nature of the payments did not require an ongoing administrative employer program to effectuate them." *Id.* at 467.

Defendants argue that the severance agreement at issue is similar to the agreements and circumstances in *Fort Halifax* and *James*, therefore ERISA does not apply.  However, I find that the parties' severance agreement differs from those at-issue in *Fort Halifax* and *James* in material ways at this stage of the litigation.  Notably, unlike the agreements in *Fort Halifax* and *James,* where the promised severance only existed in the context of one specific event (termination due to plant closure or a merger), DC 1707's severance plan existed and was operated for years prior to the merger which resulted in Plaintiffs being offered new positions with the post-merger entity.  (*See* Complaint ¶¶ 10, 14.)  Accepting the allegations in the Complaint as true, DC 1707's severance plan was consistent with the agreement in *Okun*, which the Second Circuit determined did fall within the scope of ERISA.  793 F.3d at 281.  Like the agreement in *Okun*, DC 1707's severance plan existed over a span of time and was a "commitment to provide severance benefits to a broad class of employees under a wide variety of circumstances and require[d] an individualized review whenever certain covered employees are terminated." *Id.* at 280.  At the motion to dismiss stage, I cannot conclude that the DC 1707 severance plan falls beyond the scope of ERISA.

### 2. Vacation Plan

Defendants argue that Plaintiffs' claims should be dismissed under *Massachusetts v. Morash*, 490 U.S. 107 (1989).  In *Morash* the Supreme Court was asked to decide "whether a

7

company's policy of paying its discharged employees for their unused vacation time constitutes an 'employee welfare benefit plan' within the meaning of § 3(1) of the Employee Retirement Income Security Act of 1974." *Id.* at 109. The Court did "not believe . . . the policy here to pay employees for unused vacation time constitutes an employee welfare benefit plan." *Id.* at 114. Although the plan at issue in *Morash* was not found to be an employee welfare benefit plan, I do not find that there is sufficient evidence to reach the same conclusion here. For instance, Plaintiffs allege that they were instructed not to use their vacation time until after the merger. (Complaint ¶ 13.) This fact may distinguish DC 1707's plan from that in *Morash*, where the Court explained that "[i]f the employees in this case had chosen to take a vacation, the vacation days would have been available and the vacation benefit would have been excluded under the regulation; the benefit cannot be transformed into an employee welfare benefit plan under ERISA solely because the employees did not use their vacation days prior to their formal termination of employment." 490 U.S. at 120. Further, although "[v]acation benefits paid from an employer's general assets do not constitute an employee benefit plain under ERISA," *United Auto., Aerospace, and Gr. Implement Workers of Am., Local 33 v. R.E. Dietz Co.*, 996 F.2d 592, 597 (2d Cir. 1993), "the creation of a separate fund to pay employees vacation benefits would subject a single employer to the regulatory provisions of ERISA." *Morash*, 490 U.S. at 114. There is not yet adequate evidence in the record to make a finding as to how DC 1707's vacation plan was operated and funded. At this stage, Defendants have not established that DC 1707's vacation plan is beyond the scope of ERISA.

### B. *State Law Claims*

Defendants' only argument in support of dismissing the state law claims is that because Plaintiffs do not raise plausible ERISA claims, there is no supplemental jurisdiction over

Plaintiffs' remaining New York state law claims. (Motion 6.) Because Plaintiffs' ERISA claims survive Defendants' motion to dismiss, so do their New York state law claims.

## V.     Conclusion

For the reasons stated above, Defendants' motion to dismiss is DENIED. Defendants are ORDERED to file their answers to the Complaint within two weeks of the date of this Opinion & Order.

SO ORDERED.

Dated:  October 26, 2023
        New York, New York

_____
Vernon S. Broderick
United States District Judge